The next case is in Re Durance, et al., 2017, 1486. Mr. Kennedy. May it please the Court. The PTAB has made two fundamental errors that require reversal. First, there is no substantial evidence that all of the claim elements are present in the prior art. Second, there is no substantial evidence of a coherent rationale to modify the primary reference. Well, what's missing? Tumbling? Yes, and let me point specifically to the claim elements. In Claim 1, which is directed to an apparatus, you have Element F, a means for rotating, so as to tumble. And in Claim 16, you have Elements C and D. C provides rotating the container, so as to tumble. And D provides applying microwave radiation to the tumbled material. Excuse me, the tumbling material, not the tumble. Both of those elements... Counselor, let me interrupt you. As you proceed with your argument, and as to where you're headed, I want you to address also the point of the dividers within the tumbling devices. Yes, thank you, Your Honor. Looking at specifically the apparatus claim, the means for rotating, so as to tumble, that's means plus function claiming, and it invokes a certain structure. And that structure has been defined in the prosecution of the application and also during the various stages of appeal. First, in response to the examiner's 112 rejection regarding tumbling, the applicant provided arguments regarding the structure, defining the structure, demonstrating that there was tumbling. Second, in providing its appeal brief to the PTAB, the applicant had a burden to provide or list all of the means plus function claim elements and the corresponding structure, defining where those are at. The examiner never contested the means plus function language and actually withdrew the Section 112 first paragraph rejection in light of the citation to the record and in light of an interview with counsel for the applicant. Second, the office has never contested the identification of means plus function claiming, either in the examiner's briefing or before this Court. So we would posit that the means plus function claim limitation is a means for rotating, so as to tumble, and includes the tumbling. Now, that structure, getting more specific to your question, Your Honor, requires divider walls, which are shown by reference numeral 146 in applicant's figures. Specifically, figures 5, 7, and 8, which are located on page 7 of our opening brief, show those divider walls. And those divide out the container that the organic material being dried is in. And those facilitate the tumbling so that it can occur during the rotation. I'm just curious, how do they facilitate the tumbling? They break up the cylinder. If you think about a Coke bottle filled partially with pop, and you start to try to roll it on a table, the gravity pulling down on the contents, the pop and the Coke bottle, are going to detract from it fully being able to rotate. By putting those dividers in there, you provide a buttress, essentially, for the organic materials to be biased against, so that they, during the rotation, ultimately end up rotating and tumbling. Is the idea that you've turned a cylinder into four mini-cylinders? And by making each individual cylinder now smaller, that somehow improves the tumbling action? Not precisely, Your Honor, in that the cylinder itself is no longer, when it has the divider walls, it's not purely four separate cylinders. If you look at the figures, they look more triangular in shape. And they provide that surface so that when it rotates up, it lifts and then tumbles the organic materials. The other point that I would raise is that these are wet materials. They're organic matter, they're typically wet, and they're being dried. And so the wet materials may have a tendency to slide on the surface as it's being rotated. If you look at the wefers, the primary reference, it's teaching flat receptacles. And those flat receptacles, it teaches, should be evenly distributed with the contents. In a particular thickness, it calls out 60 millimeters, so that you can have consistent microwave radiation. Why wouldn't it be obvious to tumble the things you're trying to dry out, just like a clothes dryer or a vegetable tumble basket? Do you know what I'm talking about when I say a vegetable tumble basket, where the vegetables are... I'm not sure I'm familiar with a vegetable tumble basket. It's a way to roast the vegetables where they're in a big wire basket, and it's spinning, and then the vegetables are tumbling, and you're getting a more even cook or roasting of all the individual pieces of vegetables. I can't speak specifically to the vegetable tumbling, but I can address why there's not a motivation to have this tumbling automatically added. These materials are, unlike clothing, for example, you want to have a consistent drying to them. It's food products so that they can be rehydrated at a later time. It's other organic matter, such as things being used for medicines and medicinal purposes. And so you want to have an even application of the microwave radiation. And you see this apparent in wefers when they talk about having this even distribution of the food, or of the organic material in that case, as it goes through the microwave radiation. So that when you travel through the microwave radiation for a set time, and under particular microwave conditions, you have an even distribution of that radiation to the goods, or the organic materials being transported through there. If you start tumbling the materials, you risk the issue of having an inconsistent application of the microwave radiation. That's why wefers teaches even distribution and then particular parameters for passing it. How about the opposite? By the tumbling, all surfaces are exposed to the radiation. It's not so much the surfaces as the microwave radiation can pass through the tumbled materials. What it is, is that you want to have an even distribution so that an equal amount of the microwave radiation is contacting the various organic materials. If you are tumbling, say particularly in a cylinder, you're going to have variations in the height and the depth of the organic material being tumbled. And wefers teaches you should have an even distribution of that. Going to my second point regarding the motivation to combine, I think there's some bearing on this discussion, is talking more specifically about Berger. Berger teaches sanitizing surfaces of cylinders. And these cylinders are empty. There's no contents in the cylinders. There are various types of cylinders used for other things. And they're sanitizing them by passing them through plasma, not through microwave. The microwave radiation is being used to generate the plasma. But that is a distinction between the claims in the art, one with Berger, but also with wefers there. That simply means that Berger is not a 102 reference. But in terms of being combinable with wefers or maybe wefers since he's from the unit, combinability is a different story. It's not an anticipation. That's correct. Combinability is a different story. And there's no substantial evidence of a coherent rationale to combine these references. As you have wefers teaching this transportation of these organic materials in a tray where they're in an even distribution. And the concern there is microwave radiation coming into contact with the organic materials. In Berger, you have a completely different apparatus where you're sanitizing the surface of a cylinder. You're not trying to address the contents therein. And you're rotating that cylinder so that it passes through the plasma zone. If you look at the figures from Berger patent, you'll see these little dots that indicate the plasma. And that's the plasma zone. So it's important in Berger to rotate the cylinder so that the entire surface passes through the plasma zone. You don't have that same motivation when you go back to apply it to wefers because wefers is concerned with providing consistent radiation to the surfaces, not to the surfaces, but to the organic material being passed through. So if you have, I don't know, a pile of blueberries inside of the cylinder and you're zapping it with radiation, aren't there going to be some of the blueberries at the bottom of that, I don't know, stack of blueberries that aren't really getting the same amount of radiation than the ones that are exposed on the very top of that pile? Yes, and I think that's part of the reason that wefers is concerned with providing an even distribution and a particular thickness. They specify 60 millimeters. The notion that you get from Berger is the idea, well, let's expose all the surfaces of the container so that they can get treated. And that possibly could lend itself to wefers because now you're also likewise trying to expose all the surfaces of all the blueberries inside the pile of blueberries. And I think the separation that I would draw, the distinction, is that Berger is concerned with passing the surface of the cylinder through the plasma zone so that, yes, the entire surface can be subjected to the plasma, but it's not specific about the contents. And once you add in the rotation, now you're modifying how the contents are being distributed. Is it inherent that anything that rotates is going to cause the material inside the rotating container to tumble? No, it is not. And that was established first. It was first raised by the examiner when they issued their Section 112 rejection, saying it's not clear that there would be tumbling of the materials based on just rotation. And so to overcome that, we provided a response, or the applicant provided a response, detailing out the corresponding structure, which neither of the references teach, the divider walls, among other aspects that cause the rotation. And then discussed some of the other parameters that are shown in the patent specification to promote tumbling. After providing that, the examiner withdrew that Section 112 rejection, but has since now, we have this line of argument that the rotation will result in tumbling. But this gets back to my second point, that there's not substantial evidence of coherent rationale for modifying whiffers in light of Berger, in that the PTAB did not provide a rationale for that modification. They didn't discuss the combination of the references. They said that applicant had attacked the references individually and not in their combination, but they did not provide any type of rationale for how the references could be combined and why one skilled in the art would be motivated to do so. And that is in, that's contrary to the court's recent decisions in personal web tech versus Apple and in Ray Voss, where it was specifically held that the PTAB has an obligation to provide a reasoned argument and delineation of how they came to their conclusions, particularly with respect to a motivation, so that later appeal can be decided properly based on the evidence in the record and the court's motivation, or the PTAB's motivation. With that, I'll reserve the rest of my time for rebuttal unless there's any additional questions. We will save that for you, Mr. Kennedy. Ms. Kelly. Thank you. Good morning, your honors. May it please the court. The board in this case correctly found that the claimed methods and apparatus would have been obvious in view of whiffers and Bergers. I'd like to begin, rather than going through the private patient case, by addressing some of the issues raised by this court. First of all, as to the divider walls. The divider walls are not part of the rotation means. First of all, the divider walls have nothing to do with rotation. Secondly, they're not recited anywhere in the applicant's claims, and the rotation means are not defined in the specification as including divider walls. In fact, if you look at the specification at A734, paragraph 33, which is the paragraph where appellants set forth what is the rotation means, there's no mention of tumbling or the divider walls. The only time, there are two times where tumbling is mentioned. One with respect to divider walls, but it doesn't indicate that divider walls are necessary for tumbling. In fact, it says divider walls promote tumbling. What page are you on about the divider walls? I'm sorry, I didn't give your honors enough time to go to that page. So we're looking at the patent application, and we're looking at A734. Okay, so here it does talk about how the divider walls promote rotation. Okay, so if you look at A734, paragraph 33, that's where the rotation means are set forth. There's nothing about tumbling or the divider walls. What's the page where the tumbling discussion is with relation to the divider walls? Okay, so now if we look at the very next page, A735, paragraphs 35 and 36, describe what the container looks like. The divider walls are discussed in paragraph 35. And in there, they say the divider walls are present, you know, may be present or are present in the container, and that this is to promote tumbling. So two things about that. It's part of the container. It's in their specification. It's not part of the rotation means. And secondly, it doesn't say that they're necessary for tumbling. It just says that they promote tumbling. Tumbling is also, that word tumbling and any variations of it only appear one place elsewhere in the specification that's paragraphed. Maybe I'm missing the point of what you're saying. The claims recite tumbling, and it sounds like you're disparaging what the specification discloses about tumbling. I'm sorry. There was lack of support. Tumbling is in the claims. The question is whether the combination of Wefers with Berger provides the tumbling. I believe that it does. I was trying to respond to Judge Reyna's initial question about whether divider walls were required. And what we're saying is divider walls, as disclosed in the specification, are not required because they're not part of the rotation means, and they're also not required as to tumbling because they only promote tumbling. They're not absolutely necessary to tumbling. And getting back to Judge Chen's rationale about the vegetable tosser, I'm not familiar with that particular invention. But in my mind, it's like the bingo balls in a basket with all the numbers and letters. And when you rotate that basket, it doesn't have any divider walls. But yet the balls all bounce around inside that container. Is this what the board said about the divider walls? The board did not comment about the divider walls because the divider walls were not raised in the opening brief to the board. In fact... This concept of tumbling, then, and you have a figure in the pen that's got divider walls. You've got statements in the written description that talk about divider walls with respect to tumbling. I mean, isn't that fair game? I mean, this is a live issue here in the pen. Why did the board not allow any type of discussion on this particular issue? I mean, you're splitting hairs here before us, and you're making arguments that may or may not be correct. But those are arguments that the board should have made, right? Claim construction was not an... There... What I'm saying is... Claim construction wasn't the issue. It was means plus function, claiming. And part of that is the means for tumbling, and that includes tumbling, and they associate that with the divider walls, and have them put a picture here and say this is what promotes it. Let's say two things. One is the board didn't construe that claim element because it wasn't raised properly before the board. Secondly, even if it were, the specification teaches that divider walls are not required as part to... They're not required... They're not part of the rotation means, and they're also not necessary for tumbling. I think part of the structural similarity and divider walls, and they were discussed in the reply brief in response to the examiner's answer about structural similarity. Well, the appellants introduced this, so as to tumble limitation. They introduced that... I'm saying that just as a point of... This was before the examiner, and the board did not follow up on this. I disagree with that interpretation of what happened here at the prosecution history. If I might go through how these things occurred. The so as to tumble limitation was entered just before the final rejection, and that was an attempt to distinguish between Wevers and Berger. And so the examiner in the final office action went through three pages, A147 through A149, describing how the structures of these two devices were identical and how Berger's rotation means would cause tumbling. And then the examiner said... The examiner went on later in that same office action to say, look, if you're going to rotate these containers, whatever's inside is going to tumble around in there. The examiner found that to be an inherent property of these devices that, look, you have two things that are virtually identical, Berger's rotation means and the claimed rotation means. So did they find an inherency situation here? That's what the examiner did. And then this issue about the divider walls and any structural differences was not raised, even though counsel certainly should have been on notice when the examiner spent three pages of the final office action stating that Berger's rotation means were the same or identical or substantially identical to appellant's and would have tumbling. Is that what the examiner said in the final office action? I mean, the final office action quickly pointed to figure one of Berger, right, to say this is a means for rotating and it tumbled. No, it did more than that. And then later it said anything that rotates is going to cause tumbling inside of the objects inside because that would be inherent. There's more on the tumbling question besides those two points? I agree 98% with what you've said, but I think that any person reading that, if you go on for three pages and say these structures are identical and Berger is going to... Which structures are these structures? Berger, this structure is discussed at pages 147 through 149. The examiner goes through and says how there's identity between Weffer's and Berger's and... But the means for rotating in Berger is structurally identical to the disclosed structure? He doesn't use those exact words, nor is he required to. I'm just trying to follow your train of thought. Yes, he doesn't use those exact words, but he does state that, she rather, the examiner states that if you look at 149, the examiner doesn't say, oh, these are structurally identical, but it points to the means for rotating disclosed by applicant and it says that it points to where Berger's discloses the same thing. And then it says that... I mean, am I right to say the only time the examiner brings up the word tumble in 147 to 149 is at the bottom of 148 in reference to figure 1 of Berger? He does it also, she does it also at 149, but it is in reference to figure 1. It says tumble on 149? Yes. He does, the examiner discusses tumbling also through the bottom half of page 149, but I think your point is really about didn't the examiner just point to figure 1? And if I'm wrong, please correct me. Right. And I believe that the reason the examiner pointed to figure 1 of Berger is because figure 1 of Berger shows how very similar Berger is to the claimed invention and to the prior art. You get to see the whole invention. Just like the claimed invention, you have the input end, you've got a conveyor system, you've got a vacuum, you've got a microwave, you've got an output system. Does Berger, the containers, they roll down by gravity? Berger actually, I'm glad you raised that point, Berger actually discloses five embodiments for rotating the containers. Okay, I'll let you get there, but show me where in the pages you're talking about where the examiner says inherency, uses the word inherency. The examiner at page... I don't think he does. The examiner does at page 161. The board says neither the rejection of issue nor our decision... In the final office section, the examiner... Please don't talk through the comment from the court. Neither the rejection of issue nor our decision rely on the doctrine of inherency, the board said. Yes, Your Honor. And the examiner... I don't think there's really any dispute that the examiner... If you look at page 161, that the examiner found that... And tumbling was inherent. That was the place where Judge Chen was citing to, the examiner said, rotating inside of a... I don't see it, and I think the board rejects any finding on inherency. We can go on. Okay, those are two separate issues. Judge Chen is aware of that, where the examiner cites inherency on page 161. I'll ask him later on that. Great. So the examiner found that this was inherent. The board issued a decision, which is ambiguous, where the board uses the word inherency and appears to be adopting the examiner's reasoning about the structural identity and the inherency, and then the board issues a final decision that says, we didn't mean inherency. What we were saying is that once you put... What we were saying is that once you put Berger's rotation means into Weffer's apparatus, that it would be a common-sense modification obvious to anybody who's operated a clothes dryer that you would want to tumble. And I think the board, under either theory, these claims are obvious. Would you say that's a new ground of rejection? Just hypothetically, if the examiner said, I think it's just inherent in any rotation means, that you're going to get tumbling of any objects inside the rotating container. And then the board comes from behind the curtain and says, anybody that thinks I, the board, are talking about inherency is wrong, because what I'm really trying to say is it'd be obvious to cause tumbling with a rotation means, i.e. to rotate something sufficiently so that you actually get a tumbling action inside of the rotating container. Do you think that's a new ground of rejection? I think there are two possible interpretations, at least, of the board's initial decision and then what it did on follow-up. One is that the board wasn't clear about defining all these little sub-issues, and then they clarified it in honorary hearing. Another, and in all candor, it could also be fairly read to say that the board altered its analysis enough that it was a new ground of rejection. But I would say that would be harmless error, because the board went on in its decision on rehearing and considered those very arguments that appellant made. And I also think it's really somewhat ludicrous to say that an appellant arguing against a obviousness rejection wouldn't have had fair notice that they needed to distinguish their claims from the prior art based on structure. They've identified no structure anywhere that was necessary for tumbling, according to their specification, and then an argument, no structure in the prior art that would prohibit tumbling. Thank you, Ms. Kelly. Thank you. Mr. Kennedy. Thank you, Your Honor. Three-plus minutes for rebuttal, if you need it. Thank you. It'll just be a brief moment here. I want to point out a couple things. First, there is defined means for rotation so as to tumble that applicants have provided. They provided it in the appellate record at the PTAB, where they defined they had an obligation to set forth the means plus function limitations in the corresponding structures invoking those. Specifically at page, excuse me. Yes, OK, I wanted to make sure I was on the right page. Page 96 of the appendix, when it's defining the means plus function limitation for claim element F and claim 1, you can see here toward the middle of the page, it says longitudinally extending divider walls 146. Divide the interior space into four segments. This is your board reading? Yes. But in the end, I mean, yes, because you desire the dividing walls to be part of the means for rotation, and that's what you've advocated for. In the end, what it comes down to is what you actually disclose in your spec as the means for rotation, and it's your duty to clearly identify what are the elements that are part of the structure for the means for rotation. So just because you say you want the divider walls doesn't necessarily mean that you get the divider walls. It depends really objectively on what your specification actually discloses. That's correct, Your Honor. In paragraph 39 of the specification describes the divider walls for the promoting of tumbling, and in the briefing before the PTAB where we defined the corresponding structure for that means plus function limitation, that was the portion that was described there. The other point that I wanted to raise... Are these arguments you're raising in your reply brief? There's an issue there where they were first raised... I mean, I'm talking about the opening appeal brief before the PTAB there with the definition of the means plus function language. Also, there was a description that the structure was not the same and regarding the motivation. It is true that the PTAB said that they were not going to consider pages two through four of our reply brief saying that they were not responsive to the examiner's answer. However, the examiner's answer characterized the structures as being very similar, and so it was necessary to rebut that... Or were inherent, right? I mean, arguing today that they were inherent. The office did not make the representation that they were inherent before the PTAB, and in fact, if you look at... Let's assume that they did, and after hearing today's argument and looking at this, then should you not have been allowed to... Yes, because that would have been a new ground of rejection as inherency was not part of the prior rejections in the case, and if I could point you to Appendix 146... Where did inherency first come up in your view? In my view, it was during the briefing here, maybe, or oral argument. I thought it came up at 8-161 in the examiner's final office action in response to your amendment to the claims after the earlier office action to include the tumbling notion in the functional limitation for the means-plus-function limitation, and then in response, the examiner in the final office action at 8-148 pointed to Figure 1 of Berger, and then at 8-161 made it clear that any of these rotation means, it would be inherent that they would cause objects inside said container to tumble. Is that fair to say? I think I could parse it a little bit. On 8-161... Where was I wrong with that on 8-161? The examiner said... Proclaiming Line 5. It said that it's inherent to tumble, but did not invoke an inherency rejection walking through the elements of inherency. Also, on Appendix Page 146, where the examiner is providing the office action,  is clearly depending on the rotational speed. The organic material may not be tumbling due to the centrifugal force. So we have the examiner saying that tumbling may not occur, it's dependent on certain elements, and then we have them saying that there's inherent, but they didn't walk through an inherency rejection, specifically stating that those elements are all present in an inherency fashion. That's how I would parse it. But you are correct that they said that. Centrifugal force... There's been times, and this is just my own layman experience, where I see something roll, and the contents in there are just level. They stay level, and they're not moving. Or I would imagine our dryer, if it didn't have those dividers in it, then perhaps some of the clothes would just stay at the bottom, or this thing's rolling around. Is that the view you were expressing? Yes. Thank you. I see my time has come to an end, so I'll sit down unless there's further questions for me. Thank you, Counsel. We'll take a case-in-advice, and if there are any questions, please raise them. Thank you, Your Honor. All rise. Thank you. Thank you.